**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| YE HE,<br><br>  Plaintiff,<br><br>  v.<br><br>GAIN CAPITAL HOLDINGS, INC., JOSEPH A. SCHENK, GLENN H. STEVENS, THOMAS BEVILACQUA, CHRISTOPHER W. CALHOUN, ALEX GOOR, JOHN DOUGLAS RHOTEN, CRISTOPHER S. SUGDEN, and PETER QUICK,<br><br>  Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ye He a/k/a Ricky He ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against GAIN Capital Holdings, Inc. ("GAIN Capital" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of

GAIN Capital by INTL FCStone Inc. ("INTL") and Golf Merger Sub I Inc. ("Merger Sub"), a

wholly owned subsidiary of INTL.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of

the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the

SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of

the Exchange Act (15 U.S.C. § 78aa(c)) as the Company's principal executive offices are located

in this District and the Company conducts substantial business in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint,

Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the

facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of GAIN Capital's

common stock.

7.      Defendant GAIN Capital provides trading services and solutions to retail,

institutional, and futures service customers worldwide. The Company is incorporated in Delaware

and maintains principal executive offices in Bedminster, New Jersey. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "GCAP."

8.     Defendant Joseph A. Schenk ("Schenk") is Chairman of the Board of the Company.

9.     Defendant Glenn H. Stevens ("Stevens") is President, Chief Executive Officer ("CEO"), and a director of the Company.

10.     Defendant Thomas Bevilacqua ("Bevilacqua") is a director of the Company.

11.     Defendant Christopher W. Calhoun ("Calhoun") is a director of the Company.

12.     Defendant Alex Goor ("Goor") is a director of the Company.

13.     Defendant John Douglas Rhoten ("Rhoten") is a director of the Company.

14.     Defendant Christopher S. Sugden ("Sugden") is a director of the Company.

15.     Defendant Peter Quick ("Quick") is a director of the Company.

16.     Defendants Schenk, Stevens, Bevilacqua, Calhoun, Goor, Rhoten, Sugden, and Quick are collectively referred to herein as the "Individual Defendants."

17.     Defendants GAIN Capital and the Individual Defendants are collectively referred to herein as the "Defendants."

**OTHER RELEVANT ENTITIES**

18.     INTL is a global brokerage and financial services firm providing execution, risk management and advisory services, market intelligence and clearing services across asset classes and markets around the world. INTL maintains principal executive offices in New York, N.Y. INTL's common stock trades on the NASDAQ under the ticker symbol, "INTL."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19.     On February 27, 2020, GAIN Capital issued a press release announcing that it had

entered into a definitive agreement to be acquired by INTL for $6.00 per share. The press release

states, in pertinent part:

### GAIN Capital Holdings, Inc. to be Acquired by INTL FCStone Inc. for $6.00 Per Share in Cash

BEDMINSTER, N.J., Feb. 27, 2020 /PRNewswire/ -- GAIN Capital Holdings, Inc. (NYSE: GCAP) ("GAIN" or the "Company") today announced it has entered into a definitive agreement to be acquired by INTL FCStone Inc. (NASDAQ: INTL) ("INTL FCStone").  Under the terms of the agreement, INTL FCStone will acquire the Company in an all-cash transaction. The Company's stockholders will receive $6.00 per share, representing approximately $236 million in equity value.

"GAIN's business fits naturally within INTL FCStone's diversified and scaled franchise, and our shareholders will benefit from this combination by receiving a substantial premium in an all-cash transaction. GAIN was founded over 20 years ago with the intention of providing traders with low-cost access to foreign exchange markets. By joining INTL, we see an incredible opportunity to leverage their capabilities and ecosystem of products, and to deliver an even more comprehensive offering to our customers. Bringing together GAIN's expertise in serving the retail customer and INTL's unparalleled access to the financial markets creates an exciting value proposition and enables the combined group to serve a wider range of customers," commented Glenn Stevens, Chief Executive Officer of GAIN Capital Holdings, Inc.

\*          \*          \*

The transaction is the result of a comprehensive strategic alternatives review process taken by the Company's Board of Directors. The transaction has been approved by GAIN's Board of Directors. In addition, VantagePoint Capital Partners, Michael Spencer's private investment group IPGL and Glenn Stevens, representing in aggregate approximately 44% of GAIN's stockholders, have entered into agreements to vote in favor of the transaction. The transaction is expected to be completed in mid-2020, subject to regulatory approvals and other customary closing conditions.

Sean O'Connor, CEO of INTL FCStone, commented on the transaction, "As a result of this combination, GAIN's customers will benefit from a richer product offering as well as the expanded resources and greater scale of the combined firm.

INTL FCStone, in turn, will add a new digital platform to its global financial network, significantly expanding its offering to retail clients, as well as a complementary futures business."

GCA Advisors LLC acted as exclusive financial advisor and Davis Polk & Wardwell LLP acted as legal advisor to GAIN.  Jefferies LLC acted as financial advisor and DLA Piper acted as legal advisor to INTL FCStone.

**About GAIN**

GAIN Capital Holdings, Inc. provides innovative trading technology and execution services to retail and institutional investors worldwide, with multiple access points to OTC markets and global exchanges across a wide range of asset classes, including foreign exchange, commodities, and global equities. GAIN Capital is headquartered in Bedminster, New Jersey, with a global presence across North America, Europe and the Asia Pacific regions.  For further company information, visit www.gaincapital.com.

**About INTL FCStone**

INTL FCStone Inc. connects its clients with the global markets across asset classes - providing execution, post-trade settlement, clearing and custody. Clients use its digital platforms, market intelligence and high-touch service to manage their market risk, pursue trading opportunities, make investments efficiently, and improve their business performance.  Further information on INTL FCStone is available at www.intlfcstone.com.

20.     On April 10, 2020, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

21.     On April 10, 2020, the Company filed a Form 8-K with the SEC to disclose certain positive preliminary financial results for the quarter ended March 31, 2020. The Company announced that it had experienced sharp gains in aggregate revenue, net income, and adjusted net income for the first quarter of 2020 that were generated during the post-signing Q1 period. Nevertheless, the Board continued to recommend, by a vote of seven to one, that shareholders

approve the Proposed Transaction.[1]

22.     On April 23, 2020, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2020. For the quarter, the Company's revenue increased over 483% while its adjusted earnings per share soared from $-0.76 in the first quarter of 2019 to $2.09 in the first quarter of 2020.

23.     More specifically, the Company reported net income of $77.3 million for the first quarter of 2020 as compared to a net loss of $28.4 million for the first quarter of 2019. The Company also reported Adjusted EBITDA of $114.4 million for the first quarter of 2020, as compared to a loss of $23.5 million for the same period in 2019.

24.     The Company attributed gains from its retail segment due to high volatility caused by economic concerns over COVID-19. Defendant Stevens stated that "[c]lient metrics were strong during the quarter, with a 57% year-on-year increase in clients who placed their first trade. Market conditions not only attracted new clients, but also engaged those who had previously opened accounts during 2019 but had not yet traded. That in turn helped improve our 3-month trailing active accounts by 25% compared to last year[.]"

25.     The Company further announced in its April 23, 2020 press release that the "[a]cquisition by INTL FCStone Inc. remains on track to complete during the 3rd quarter of 2020."

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

26.     The Proxy Statement, which recommends that GAIN Capital shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) financial analyses performed by the Company's

---

[1] According to the Proxy Statement, Defendant Goor voted against approval of the merger agreement with INTL.

financial advisor, GCA Advisors LLC ("GCA Advisors"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

27.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Projected Financial Information; (ii) GAIN's Reasons for the Merger; (iii) Recommendation of the GAIN Board of Directors; (iv) Opinion of GAIN's Financial Advisor; and (v) Background of the Merger.

28.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, GAIN Capital shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.   Material Omissions Concerning GAIN Capital's Financial Projections**

29.     The Proxy Statement omits material information concerning GAIN Capital's financial projections.

30.     The Proxy Statement provides three sets of projections: (1) the "June 2019 Projections," which GAIN Capital prepared in June 2019 in connection with the Board's review of strategic alternatives; (2) the "September 2019 Projections," which updated the June 2019 Projections to reflect GAIN Capital's then-recent performance and then-current expectations; and (3) the "January 2020 Projections," which updated the September 2019 Projections to reflect GAIN Capital's "management's view that unfavorable market conditions from fiscal year 2019 were likely to persist through 2020" (collectively, the "Projections").

31.     The Proxy Statement, however, fails to disclose the following concerning the Projections: (1) all line items used to calculate (i) EBITDA, (ii) Adjusted EBITDA, and (iii)

unlevered free cash flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

32.     The disclosure of this projected financial information is material because it would provide GAIN Capital shareholders with a basis to project the future financial performance of GAIN Capital and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

33.     When a company discloses non-GAAP financial metrics in a Proxy Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

_____

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 24, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

34.     Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

35.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to GAIN Capital shareholders.

**2.     Material Omissions Concerning GCA Advisors Financial Analyses**

36.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning the analyses performed by GCA Advisors.

37.     The Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction utilized by GCA Advisors in its "Selected Public Company Analysis" and "Selected Transactions Analysis."

38.     The  Proxy Statement fails to disclose the following concerning GCA Advisors' "Discounted Cash Flow Analysis": (1) the terminal values of GAIN Capital; (2) all line items used to calculate unlevered free cash flow; and (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 12.9% to 14.9%; and (ii) terminal growth rates of (1%) to 1%.

39.     The Proxy Statement fails to disclose the following concerning GCA Advisors' analysis of the premiums paid in completed or announced acquisitions of 28 U.S. publicly traded technology and financial services target companies, announced or completed since January 1, 2017 through February 21, 2020: (1) the transactions observed by GCA Advisors in its analysis; and (2) the individual premiums paid in each of the transactions.

40.     The valuation methods, underlying assumptions, and key inputs used by GCA Advisors in rendering its purported fairness opinion must be fairly disclosed to GAIN Capital shareholders. The description GCA Advisors' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, GAIN Capital shareholders are unable to fully understand GCA Advisors' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on this information in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to GAIN Capital shareholders.

**3.  Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

41.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

42.     The Proxy Statement provides that the Company entered into confidentiality agreements with various parties leading up to the Proposed Transaction, including Party A, Party B, and Party C, among others.

43.     The Proxy Statement, however, fails to disclose whether the Company's confidentiality agreements contained standstill provisions with "don't ask, don't waive" provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

44.     Without this information, the Company's shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable shareholder would want to know, prior to voting for or against the Proposed

Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

45.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to GAIN Capital shareholders.

<u>**COUNT I**</u><br>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**<br>
<u>**Against All Defendants**</u>

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

49.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

50.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder.

51.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power

12

to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

56.     In addition, as the Proxy Statement sets forth at length, and as described herein, certain Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

13

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 24, 2020                                Respectfully submitted,

**HALPER SADEH LLP**

/s/ Zachary Halper
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application
forthcoming)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*